BUSSARD ET AL. *v.* OHIO DEPARTMENT OF TRANSPORTATION.

(No. 83-06338—Decided May 28, 1986.)

Court of Claims of Ohio.

*Eugene Droder, Jr.* and *A. Dennis Miller,* for plaintiff.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark T. D'Alessandro,* for defendant.

CLINE, J. On October 18, 1982, plaintiffs were involved in a two-vehicle collision at the intersection of State Route 133 and Weaver Road. Plaintiffs' car was traveling west on Weaver Road as it approached State Route 133. Normally there is a stop sign on Weaver Road where it intersects with State Route 133, but on October 18 this sign was off the pole and lying face down in the grass by the side of the road. Plaintiff Larry Bussard, the driver of the car, was not familiar with this intersection and drove straight across State Route 133 without stopping. While in the middle of the intersection his car was hit broadside by a car traveling north on State Route 133. Plaintiff Larry Bussard was seriously injured; the rest of his family, plaintiffs Paula, Christa and Jonathan, were all injured in varying degrees. By this court's order of October 11, 1985, the trial of this case, which began October 16, 1985, was bifurcated on the issues of liability and damages. The extent of the various injuries suffered by the plaintiffs will not be discussed in this decision.

The issues of this case revolve around the duty of the defendant to install, maintain, and inspect the stop sign on Weaver Road. Weaver Road is either a small county or township gravel road. The road is very narrow and in certain

stretches only one car can pass. State Route 133 was classified by the defendant as a local highway, but it is a two-lane paved road. The defendant has no duty to maintain Weaver Road. The duty to maintain the road itself lies with the county or township. However, the defendant is responsible for inspection and maintenance of the stop sign on Weaver Road where it intersects State Route 133. This sign was erected by the defendant; it was periodically inspected by agents of the defendant and the defendant has admitted there was a duty to inspect and maintain the stop sign once it had been erected.

Plaintiffs have argued the existence of the defendant's duty to maintain the stop sign coupled with the obvious fact that the sign was on the ground when this unfortunate collision occurred creates a situation of negligence *per se.* In proposing this theory, plaintiffs rely on the decision of the Ohio Supreme Court in *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776. The language in *Reynolds* which outlines when a state department or agency may be held liable for negligence *per se* is contained at 70-71, 14 OBR at 508, 471 N.E. 2d at 778-779 of that decision, as follows:

"* * * The language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities.

"Under the above standard plaintiffs may not maintain an action against the state for its decision to furlough a prisoner. However, once such a decision has been made pursuant to R.C. 2967.26, a cause of action can be maintained against the state for personal injuries proximately caused by the failure to confine the prisoner during non-working hours in accordance with R.C. 2767.26(B). Such a failure to confine is negligence *per se,* and is actionable pursuant to R.C. 2743.02. * * *"

Plaintiffs would have this court analogize the state's failure to confine a furloughed prisoner in the *Reynolds* case with its alleged failure to properly maintain the stop sign on Weaver Road in the case before this court. Such an analogy cannot be made. In order for the violation of a statute to be found to be negligence *per se,* that statute must be found to set forth specific duties. *Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, 25, 22 O.O. 3d 152, 155, 427 N.E. 2d 774, 777. The statute in question in *Reynolds* did set forth a specific duty to confine furloughed prisoners during non-working hours. See R.C. 2967.26. This duty was violated by the Department of Rehabilitation and Correction. The statute plaintiffs would have this court hold creates a specific duty is R.C. 4511.10, which provides in part:

"The department of transportation may place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are necessary to indicate and to carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, or to regulate, warn or guide traffic."

If this court were to find that R.C. 4511.10 creates the same kind of specific duties as the Ohio Supreme Court found in the *Reynolds* case, the Department of Transportation would be negligent *per se* for any collision caused by the failure of a traffic control device. No notice, ac-

tual or constructive, would have to be shown by plaintiffs. All plaintiffs would have to prove would be that the traffic control device was not in place, or was not functioning properly. This court cannot accept plaintiffs' position on this point. R.C. 4511.10 does not create a specific duty to maintain stop signs to the extent required to support a finding of negligence *per se*.

Absent a finding of negligence *per se*, the issue then becomes whether the defendant was simply negligent in its inspection and/or maintenance of the stop sign on Weaver Road. It was never conclusively proven at trial just how this stop sign came to be lying face down by the side of the road on the day of this collision. Vandalism is suspected, but plaintiffs have made no allegation that the actual falling of the sign was due to any negligence on the part of the defendant. No allegation has been made that defendant knocked the sign down or that the sign had been improperly installed; nor have plaintiffs claimed it fell from age, neglect or improper maintenance. Thus, plaintiffs' entire case rests on the duty of the defendant to discover this sign was down and the duty to put it back up.

The issue of whether the defendant was negligent in allowing the stop sign to lie face down at the side of the road revolves around the question of notice. If those officials responsible for the maintenance of road signs in this area had notice of this stop sign's being down, and a reasonable amount of time to put it back up before this collision occurred, their failure to do so would be negligent. However, there was no evidence produced at trial to show that any official or agent of the defendant had actual notice of this stop sign's being down before the collision. Two witnesses who lived in the area testified they had noticed the stop sign was down but neither had made any attempt to notify the defendant.

Having failed to show actual notice

on the part of the defendant that this stop sign was down, plaintiffs must rely on the doctrine of constructive notice to show negligence by the defendant. Black's Law Dictionary (5 Ed. 1979) 958, provides a useful definition of constructive notice:

"Constructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it. * * *"

Applying this definition to the issue before this court, the question becomes whether knowledge of the stop sign being down can be imputed to the defendant. Certain agents of the defendant, who had the duty of inspecting road signs in this area, could have discovered the stop sign was down by the exercise of proper diligence in carrying out their duty.

As stated in the defendant's proposed findings of fact and conclusions of law filed with the court on October 30, 1985, the defendant relies on the following sources of information to check the conditions of road signs: (a) two employees for each county who specifically patrol the roads and repair or replace signs; (b) reports from the Ohio Department of Transportation's other divisions, when fallen signs are observed; (c) reports from the State Highway Patrol; and (d) reports from the public. There was no evidence produced at trial to indicate the defendant received any notice from the sources referred to in (b), (c) or (d) above.

As discussed previously, the defendant had a duty to maintain the stop sign on Weaver Road. Defendant's proposed findings of fact and conclusions of law state that the Ohio Department of Transportation's sign men patrol the state roads under a schedule whereby they attempt to cover each state

highway approximately once every month. There is a dispute as to just when the intersection of Weaver Road and State Route 133 was last inspected before the October 18, 1982 collision. Plaintiffs maintain the Ohio Department of Transportation records show the intersection was last inspected on June 16, 1982, while defendant produced a daily log sheet showing an employee had patrolled the section of State Route 133 crossed by Weaver Road on September 10, 1982. While the log sheet produced by defendant may show someone patrolled the road, no notation on the sheet indicates the specific sign in question was inspected. The unfortunate fact that must be drawn from the testimony heard by this court is that there does not appear to have been any organized procedure for inspection of road signs in this area. Even assuming the stop sign was inspected when State Route 133 was patrolled on September 10, 1982, it was more than one month later that the collision involving plaintiffs occurred. Defendant's witness, charged with inspecting road signs, testified that he worked under a schedule which provides that all state highways in his district are to be patrolled at least once a month. Such a schedule was not followed in this case. Indeed, the testimony of this witness gave rise to questions of whether such a thing as an organized inspection schedule even existed. Thus, it can be said that certain agents of the defendant had a duty to inspect road signs in the area and did not exercise proper diligence in carrying out this duty. What remains to be considered is whether the downed stop sign could have been discovered by the exercise of proper diligence.

The testimony of two witnesses at trial indicated the stop sign was down for a period of at least ten days and more likely two weeks before the collision. Had this sign fallen down the day before the collision, the absence of a reasonable inspection schedule for this road would not be a contributing factor in the collision and, as such, the defendant's lack of diligence would not give rise to a finding of constructive notice. Had the sign been down for several months, there is little doubt a reasonable inspection schedule would have led to the discovery of the downed sign. The lack of such a schedule was a failure to exercise proper diligence that could give rise to a finding of constructive notice. The determination this court must make is whether the sign's being down for a period of ten to fourteen days was sufficient to give the defendant constructive notice of the condition.

This is not a case of first impression for this court. In a virtually identical fact pattern this court determined that ten to fourteen days was a sufficient time period to give rise to a finding of constructive notice that a stop sign was down. *Dague* v. *State Highway Maintenance Dept.* (Aug. 17, 1977), Court of Claims No. 76-0472, unreported. In the *Dague* case, plaintiff's vehicle was headed east on Lake O'Pines Road in Stark County when it was struck by a car headed south on State Route 43. The stop sign on the southwest corner of the intersection, which controlled traffic headed east on Lake O'Pines Road, was lying face down in the grass by the side of the road. Testimony indicated the sign had been down from ten days to two weeks before the collision, which was found by the court to be a sufficient interval to give rise to a finding of constructive notice of this condition on the part of the state.

A finding of constructive notice is a determination the court must make on the facts of each case not simply by applying a pre-set time standard for the discovery of certain road hazards. However, this court is hard-pressed to conceive of a more potentially deadly road hazard than a missing stop sign, even on a lightly traveled highway. For

this reason, this court will follow the reasoning of the *Dague* case and find defendant had constructive notice of the stop sign's at the intersection of Weaver Road and State Route 133 being down on October 18, 1982. Having had such constructive notice of this condition, the defendant's failure to correct it was negligent. This negligence on the part of the defendant was a proximate cause of the plaintiffs' collision and defendant is found to be liable to all plaintiffs for damages sustained as a result of this collision.

I note, also, that the Supreme Court of Ohio in *Royce* v. *Smith* (1981), 68 Ohio St. 2d 106, 22 O.O. 3d 332, 429 N.E. 2d 134, held township trustees could be responsible for the negligent failure to maintain a stop sign on a township road.

The final issue to be determined is the allegation of contributory negligence on the part of the driver of plaintiffs' car, Larry Bussard. There is no dispute that all other factors aside, it appeared plaintiff had the right of way at this apparently uncontrolled intersection. As plaintiff was approaching from the east, he was on the right of the car approaching from the south which struck him. This position would give him the right of way under R.C. 4511.41. However, having the right of way at an intersection does not relieve a driver from the duty to use reasonable caution when approaching or proceeding through the intersection. On October 18, 1982, the visibility for traffic on Weaver Road, approaching State Route 133, was good. Plaintiffs testified to this. Weaver Road is a small road, gravel in some spots and in other places so narrow so as to allow only one car to pass at a time. Plaintiff testified he was traveling between forty and fifty miles per hour as he approached the intersection and did not slow down as he entered it. Despite the fact this was within the speed limit, plaintiff was still under a duty to exercise reasonable care when entering an intersection. This court finds plaintiff was contributorily negligent when he proceeded across a clearly visible paved highway from a narrow gravel road without slowing down to look for oncoming traffic. The degree of plaintiff Larry Bussard's contributory negligence is thirty percent. Therefore, any award of damages to plaintiff Larry Bussard shall be reduced by thirty percent. The finding of contributory negligence on the part of plaintiff Larry Bussard shall not affect the determination of damages for the other plaintiffs, Paula, Christa and Jonathan Bussard. Judgment is hereby accordingly entered for the plaintiffs.

*Judgment for plaintiffs.*

CLINE, J., retired, of the Probate Court of Pickaway County, sitting by assignment in the Court of Claims.