**In re Richard/Michelle ANDERSON, Debtors.**

**John J. Hunter, Trustee, Plaintiff,**

**v.**

**Bank of New York, et al., Defendants.**

**Nos. 99–3180, 99–31206.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 4, 2001.

John J. Hunter, Toledo, OH, trustee.

Donald P. McFadden, David A. Freeburg, Cleveland, OH, for Bank of New York and The Money Store.

Thomas H. Freeman, Norwalk, OH, for Richard and Michelle Anderson.

Jeffrey A. Healy, Cleveland, OH, for Precision Land Title Agency.

Jeffrey Baddeley, Cleveland, OH, for Midwest National Mortgage Banc, Inc.

## *MEMORANDUM OPINION AND DECISION*

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Defendant's Motion for Summary Judgment, Memorandum in Support, and Reply to the Plaintiff's Response to the Defendant's Motion for Summary Judgment; and the Plaintiff's Response to the Defendant's Motion for Summary Judgment, and Response to the Defendant's Reply to the Plaintiff's Response. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Defendant's Motion for Summary Judgment should be Denied.

### *FACTS*

The facts of this case are not in dispute. On October 23, 1997, the Debtors, Richard C. Anderson, and Michelle A. Anderson (hereinafter referred to as the "Debtors"), granted a mortgage interest in their property to Midwest National Mortgage Banc, Inc. This mortgage was then assigned to TMS Mortgage, Inc. who in turn, on November 30, 1997, assigned the mortgage to the Defendant, the Bank of New York (hereinafter referred to as the "Defendant"). On October 16, 1998, the Defendant commenced a foreclosure action against the Debtors in the Huron County Court of Common Pleas. Service of the summons was then perfected on the Debtors on December 1, 1998. However, before the Defendant's action of foreclosure could be completed, the Debtors petitioned

this Court for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, in accordance with 11 U.S.C. § 701, John Hunter was appointed as the trustee for the Debtors' bankruptcy estate.

On August 31, 1999, the Trustee commenced an adversary proceeding to have the Defendant's mortgage interest avoided pursuant to his strong-arm powers under 11 U.S.C. § 544(a)(3). In support of his compliance with the requirements of § 544(a)(3), the Trustee maintains that the mortgage held by the Defendant was improperly executed under Ohio law. Specifically, the Trustee, in his complaint against the Defendant, alleges that in contravention to O.R.C. § 5301.01, only one witness was present at the time the Debtors executed the mortgage assigned to the Defendant, and as a result, the mortgage, being invalid under Ohio law, may be avoided pursuant to § 544(a)(3). In response, the Defendant filed a Motion for Summary Judgment in which it is asserted that, notwithstanding the improper execution of the Debtors' mortgage, the Trustee, as a matter of law, is prohibited from using his avoiding powers under § 544(a)(3). As will be more fully explained later, the Defendant's legal argument in support of its Motion for Summary Judgment rests upon its contention that the Trustee received constructive notice of its mortgage interest in the Debtors' property.

### LAW

**544. Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation in-curred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

### DISCUSSION

Determinations concerning the administration of the debtor's estate; determinations as to the validity, extent and priority of liens; and other proceedings affecting the liquidation of the assets of the estate are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A)/(K)/(O). Thus, this case is a core proceeding.

In the instant case, the Trustee seeks to avoid the mortgage the Defendant holds against the Debtors' property pursuant to his avoiding powers under 11 U.S.C. § 544(a)(3). In opposition thereto, the Defendant argues that the Trustee, as a bona fide purchaser under § 544(a)(3), does not have a superior interest in the Debtors' property, and thus may not rely on § 544(a)(3) to avoid its mortgage interest in the Debtors' property. On this issue, the Defendant filed a Motion for Summary Judgment.

The standard for a summary judgment motion is set forth in Fed.R.Civ.P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides in pertinent part: "A movant will prevail on a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all the elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). Thereafter, upon the movant meeting this burden, the opposing party may not merely rest upon their pleading, but must instead set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995).

■■■ Section 544(a)(3), under which the Trustee brings his complaint to avoid the Defendant's mortgage, is commonly referred to as the strong-arm clause, and permits a bankruptcy trustee to avoid any unrecorded or undisclosed interests in property if a bona fide purchaser would have prevailed over that interest. In order to accomplish this goal, § 544(a)(3) confers upon a bankruptcy trustee the rights and powers of a bona fide purchaser of real property from the debtor if, at the time the bankruptcy is commenced, a hypothetical buyer could have obtained bona fide purchaser status. *Owen–Ames–Kimball Co. v. Michigan Lithographing Co. (In re Michigan Lithographing Co.),* 997 F.2d 1158, 1159 (6th Cir.1993). In this respect, the extent to which a trustee's rights as a bona fide purchaser of real property will defeat a competing interest in the same property is measured by the substantive law of the state governing the property in question. *Id.* Thus, for purposes of § 544(a)(3), if a bona fide purchaser has, under applicable state law, a supe-

rior interest in an item of property, the trustee may avoid any competing interest in the same property for the benefit of the debtor's bankruptcy estate. Conversely, valid state law defenses against a bona fide purchaser will defeat a trustee's attempts to avoid a party's interest in the debtor's property. This rule, however, is limited in a very important respect: The trustee's status as a bona fide purchaser is conferred without regards to any actual notice that the bankruptcy trustee may have, although constructive notice, if applicable state law so provides, is still relevant. *Watkins v. Watkins,* 922 F.2d 1513, 1514 (10th Cir.1991); *Nat'l Bank of Alaska, N.A. v. Erickson (In re Seaway Express Corp.),* 912 F.2d 1125, 1128–29 (9th Cir. 1990).

With regards to the above tenets, and in support of its Motion for Summary Judgment, the Defendant argues that the Trustee had constructive notice of its interest in the Debtors' property, and thus the Trustee's status as a bona fide purchaser under § 544(a)(3) does not confer upon him a superior interest in the Debtors' property. In support of the assertion that the Trustee received constructive notice of its interest, the Defendant maintains that even if its mortgage interest in the Debtor's property was not properly executed, it would still retain an equitable lien against the Debtors' property, and that due to the operation of the legal doctrine known as lis pendens, the Trustee had constructive notice of this equitable lien. In opposition to this argument, the Trustee asserts that, in addition to the lis pendens doctrine not being applicable in this case, the Defendant has no lien rights under their document filed as a mortgage, and thus their rights in the Debtors' property are not superior to his rights in the property.

■■■ In addressing the issues raised by the Parties, the Court first begins with the

Defendant's contention that the lis pendens doctrine provided the Trustee with constructive notice of its interest in the Debtors' property. However, before doing so, the Court observes that since Ohio is the situs of the real property at issue, Ohio law will be applicable to the Trustee's status as a bona fide purchaser. *Rinn v. First Union National Bank of Maryland,* 176 B.R. 401, 408 (D.Md.1995). In this regard, Ohio law prescribes that a bona fide purchaser will only have a superior right in an item of property if the property was taken in good faith, for value, and without actual or constructive notice of another entity's interest in the property. *See Wayne Bldg. & Loan Co. v. Yarborough,* 11 Ohio St.2d 195, 200, 228 N.E.2d 841 (1967).

▇▇▇▇ The doctrine of lis pendens operates so as to charge a subsequent purchaser of and third parties having interest in property with notice of actions concerning the property. O.R.C. § 2703.26.[1] The effect of the doctrine is that any party acquiring an interest in an item of property while a suit is pending, takes that property subject to the final outcome of the suit. *Martin, Rochford and Durr v. Lawyer's Title Insurance Corp.,* 86 Ohio App.3d 20, 22, 619 N.E.2d 1130 (1993). The doctrine commences when the summons of the underlying complaint has been served or publication thereon made. O.R.C. § 2703.26.

▇▇▇▇ Courts in other jurisdictions which have addressed the lis pendens doctrine in the context of a trustee's avoiding powers have uniformly held that the doctrine can provide constructive notice to a bankruptcy trustee for purposes of § 544(a). *See,*

*e.g., Electric M & R. Inc. v. Aultman (In re Aultman),* 223 B.R. 481, 486–87 (Bankr. W.D.Pa.1998); *Condren v. Harrison (In re Borison),* 226 B.R. 779, 788–89 (Bankr. S.D.N.Y.1998). *Koski v. Seattle First Nat'l Bank (In re Koski),* 149 B.R. 170, 176 (Bankr.D.Idaho 1992). In this case, the Court can see no reason why it should deviate from this trend since the Ohio Supreme Court, in interpreting Ohio law, has specifically held that the lis pendens doctrine imputes constructive to any party, including a bona fide purchaser, who acquires an interest in property subject to a pending legal action. *Cook v. Mozer,* 108 Ohio St. 30, 36–37, 140 N.E. 590, 592 (1923). As explained by the Supreme Court in *Cook v. Mozer:*

> The general rule is that one not a party to a suit is not affected by the judgment. The exception is that one who acquires an interest in property which is at that time involved in litigation in a court having jurisdiction of the subject-matter and of the person of the one from whom the interests are acquired, from a party to the proceeding, takes subject to the judgment or decree, and is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset. This is so irrespective of whether he has been made a party to the proceeding, or had actual notice of the pendency of the proceeding, and even where there was no possibility of his having had notice of the pendency of the litigation. It is immaterial that a purchaser was a bona fide purchaser and for a valuable consideration.

*Id.*

▇▇▇▇ However notwithstanding the fact that the lis pendens doctrine can pro-

---

1. The doctrine, although of common law origin, is now statutorily provided for in O.R.C. § 2703.26 and provides: "[w]hen summons has been served or publication made, the action is pending so as to charge third person

with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."

vide a bankruptcy trustee with constructive notice of a third-party's interest in a debtor's property, inherent in the nature of the lis pendens doctrine is the fact that the doctrine does not, in and of itself, create any substantive rights. *See Katz v. Banning,* 84 Ohio App.3d 543, 617 N.E.2d 729 (1992). Instead, the lis pendens doctrine is simply a procedural device designed to protect the status quo until a party's substantive rights in an item of property can be determined. *Id.* at 549, 617 N.E.2d at 733. Thus, as the Trustee correctly points out, a party may not rely on the lis pendens doctrine to cure an otherwise fatal defect that exists in a party's interest in an item of property. Accordingly, the Court must now determine if the Defendant had an interest in the Debtor's property against which the lis pendens doctrine provided the Trustee with constructive notice thereof. In this context, the Defendant argues that even if its mortgage interest in the Debtors' property was improperly executed, it has at the very least an equitable lien against the Debtors' property.

Under Ohio law, an equitable lien was defined by the Ohio Supreme Court as "a right of a special nature over the thing, which constitutes a charge or an incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under the judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists." *Klaustermeyer v. The Cleveland Trust Co.,* 89 Ohio St. 142, 145–46, 105 N.E. 278, 280 (1913). Stated in a simpler way, an equitable lien is a charge on a thing which can be enforced only in equity.

 Such a lien may arise, as the Defendant contends, when a mortgage is improperly executed or recorded. *Basil v. Vincello,* 50 Ohio St.3d 185, 188–89, 553 N.E.2d 602, 606 (Ohio 1990). *See also Snyder v. Betz,* 2 Ohio C.C. 485, 1 Ohio C.D. 602 (1887), *aff'd* 48 Ohio St. 492, 28 N.E. 234 (1891); *but see Foerstner v. Citizens' Sav. & Trust. Co.,* 186 F. 1, 4 (6th Cir.1911) (holding an improperly executed, but recorded mortgage creates a contract for a lien, as distinguished from an actual lien). The application of an equitable lien against a party, however, is not automatic. *See Calahan v. Babcock,* 21 Ohio St. 281 (1871) (under Ohio law, an equitable lien, unlike a lien that arises by contract or statute, provides only a remedy rather than a cause of action, and is therefore, pendant to the resolution of the other claims). Instead, as the purpose of an equitable lien is to prevent a party's unjust enrichment, an equitable lien will only be applied against a party, when its purpose would be clearly furthered. *See Bradford v. Reid,* 126 Ohio App.3d 448, 453, 710 N.E.2d 761, 763 (Ohio Ct.App.1998). In this respect, equitable liens are frequently applied against a party who was subject to the underlying transaction, as that party is rarely in a position to complain as to the inequity of the lien. On the other hand, equitable liens are applied sparingly against innocent third-parties who acquire an interest in the property to be subject to the equitable lien as that party did not participate, and most likely has no knowledge of the circumstances which give rise to the equitable lien. *See Diamond Glass Co. v. Elberta Amuse. Co.,* 4 OL Abs 716 (1926). Also along this line, equitable liens are not favored in bankruptcy because as stated by the bankruptcy court in *In re T. Brady Mechanical Services, Inc. v. Moran:* "[i]n a bankruptcy case, there is nothing equitable about taking money away from unsecured creditors and giving it to a creditor that failed to protect its own interests when it had a chance to do so." 129

B.R. 559, 563 (Bankr.N.D.Ill.1991), *citing In re Hendleman,* 91 B.R. 475, 476–77 (Bankr.N.D.Ill.1988); *see also Healthback, L.L.C.,* 226 B.R. 464, 470 (Bankr.W.D.Okla. 1998) (one of the primary purposes of a bankruptcy case is to ensure that all creditors are treated equally within the scope of the Bankruptcy Code).

In this case, of course, the Trustee, as a bona fide purchaser, is clearly in the category of an innocent third-party who acquired an interest in the Debtors' property. Thus, this Court, based upon equitable principles, is to say the very least, hesitant about imposing an equitable lien against the Trustee and in favor of the Defendant. However, even if the Court were to put such equitable concerns aside and find that the Defendant did, in fact, maintain an equitable lien against the Debtors' property, the Court holds that, as a matter of law, an equitable lien created on account of an improperly executed or unrecorded mortgage will not defeat a bankruptcy trustee's interest in the debtor's property for purposes of 11 U.S.C. § 544(a)(3). The following explains the Court's position, which is generally in accord with those decisions reached by other courts which have addressed this issue.

*Placer Savings & Loan Association v. Walsh (In re Marino),* 49 B.R. 600, 603 (N.D.Cal.1985) (section 544(a)(3) enables the trustee to take title to the real property free from all equitable liens) *citing Stepp v. McAdams,* 88 F.2d 925, 928 (9th Cir.1937); *In re Hendleman,* 91 B.R. 475, 476 (Bankr.N.D.Ill.1988) (an equitable lien in the debtor's property by definition is unperfected and thus can never survive attack by a Chapter 7 Trustee); *In re Chenich,* 100 B.R. 512, 513–15 (9th Cir. BAP 1987); *McRoberts v. Transouth Financial (In re Bell),* 194 B.R. 192, 196 (Bankr.S.D.Ill.1996) (equitable liens arising under state law are contrary to the letter and purpose of the Bankruptcy Code and are, therefore, ineffective against a trustee's § 544(a) avoiding powers). *But see Sovran Bank v. United States (In re Aumiller),* 168 B.R. 811, 819 fn. 7 (Bankr. D.D.C.1994.)

Prior to the enactment of § 544(a)(3), any bankruptcy trustee who wished to avoid an improperly executed or unrecorded mortgage was required to rely solely on its status as a judicial lien creditor as provided for in § 544(a)(1)[2] or its predecessor under the Bankruptcy Act, § 70(c).[3] This situation, however, in some

---

**2.** This section provides that, "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]"

**3.** Section 70(c) of the Bankruptcy Act provided, in part, "[t]he trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists."

instances left the bankruptcy trustee with no recourse against the holder of an improperly executed or unrecorded interest in real property as the recording statutes in some states were only designed to protect bona fide purchasers, and not judicial lien creditors. The enactment of § 544(a)(3), however, eliminated this problem as it conferred upon the bankruptcy trustee, the status of a bona fide purchaser of real property under applicable state law. Thus, although there is scant legislative history, it is apparent from this context that by eliminating the effect of state-to-state discrepancies in recording statutes, the primary purpose of § 544(a)(3) was to give bankruptcy trustees the power to avoid mortgages and other improperly executed and/or unrecorded interests in real property. *In re Mill Concepts Corp.*, 123 B.R. 938, 942 (Bankr.D.Mass.1991); *Elin v. Busche (In re Elin)*, 20 B.R. 1012, 1018–19 (D.N.J.1982). This conclusion is reinforced by the fact that, unlike § 544(a)(1), a trustee's avoiding powers under § 544(a)(3) are specifically limited to real property. However notwithstanding § 544(a)(3)'s underlying purpose, the Defendant seeks to undo the operation of § 544(a)(3) on the basis that the Trustee had constructive notice of its equitable lien.

Constructive notice, which means implied notice or imputed notice,[4] is a relatively easy standard to impose. In fact, Ohio law provides that a person may be said to be imposed with constructive notice if "he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Bussard v. Ohio Dept. of Transp.*, 31 Ohio Misc.2d 1, 3, 507 N.E.2d 1179 (Ohio Ct.Cl.1986). In addition, and as previously discussed, equitable liens are very frequently imposed against a party that participated in the underlying transaction, notwithstanding the fact that from a legal perspective a cognizable interest in the property was not actually created. Therefore, as a result of these tenets, most parties who improperly execute or fail to record their interest in a debtor's property could be said to hold an equitable lien in that property, and in a situation where the lis pendens doctrine is applicable, the bankruptcy trustee would also likely be imposed with constructive notice of that interest.

However, the difficulty the Court has with adopting the Defendant's interpretation of § 544(a)(3), as it relates to equitable liens and the lis pendens doctrine, is that it goes clearly contrary to the statute's purpose which, as just explained, is to enable a bankruptcy trustee to avoid improperly executed or unrecorded interest in real property. In addition, adopting the Defendant's interpretation of § 544(a)(3) would, in contradiction to basic canons of statutory construction, render the statute essentially superfluous as a bankruptcy trustee would almost always have constructive notice of a party's equitable lien. *See, e.g., K.V. Mart Co. v. United Food and Commercial Workers Int'l Union, Local 324*, 173 F.3d 1221, 1225 (9th Cir.1999) (under accepted canons of statutory interpretation, the court must interpret a statute as a whole, giving every effort to ensure that the statute is not interpreted in a manner that renders the statute inconsistent, meaningless or superfluous.); *In re Fesq*, 153 F.3d 113, 115 (3rd Cir.1998) (as a general rule of statutory construction a statute should be read to avoid a result that would render the statutory language superfluous, meaningless or irrelevant). This later conclusion is based upon two observations regarding the interrelation-

4. BLACK'S LAW DICTIONARY 314 (6th ed.1990).

ship between equitable liens and constructive notice. First, when a mortgage is improperly executed but nevertheless recorded, all bankruptcy trustees could be said to be on constructive notice as to the possible existence of an equitable lien as a record of the improperly executed mortgage would undoubtedly exist. Second, even in a situation where a mortgage, although properly executed, is not recorded, a bankruptcy trustee, in most instances, would be on constructive notice of the underlying mortgage or equitable lien given the fact that nearly all real property owned by a debtor in a Chapter 7 liquidation bankruptcy is subject to an encumbrance in one form or the other. Stated in a different manner, if a trustee were to discover that a Chapter 7 debtor's property was not subject to a mortgage or other similar encumbrance interest, Ohio's rule on constructive notice would mostly likely impose upon the trustee a duty to inquire into the situation further.

■■■ Accordingly, as this Court will not, in the absence of specific statutory language to the contrary, adopt an interpretation of a statute which would potentially render both its purpose and application superfluous, the Court, for purposes of this case, finds that even if the Defendant could be said to hold an equitable lien in the Debtors' property, the Trustee's potential constructive notice of such a lien would not negate his avoiding powers under § 544(a)(3). In this regards, the Court observes that § 544(a)(3) specifically provides that a trustee shall acquire his interest "without regard to any knowledge," and that the constructive notice exception which exists thereto (and which was mentioned earlier), is a judicially created exception which was designed to further, not constrain, the purpose of the Bankruptcy Code. *In re Graham,* 110 B.R. 408, 413 (S.D.Ind.1990). However,

with regards to the Court's holding, one final comment must be made: The Court's decision herein is specifically limited to the situation where a bankruptcy trustee, in accordance with § 544(a)(3), seeks to avoid a mortgage interest that was either improperly executed or was not recorded pursuant to applicable state law, and where the creditor seeks to impute constructive notice to the trustee through the doctrine of lis pendens. Thus, this ruling should not be construed to mean that under other factual scenarios, a bankruptcy trustee may be prohibited, on account of constructive notice, from applying his strong-arm powers.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that Motion for Summary Judgment submitted by the Defendant, the Bank of New York, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that this matter be, and is hereby, set for a further Pre-trial on Tuesday, January 30, 2001, at 1:00 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Ave, Toledo, Ohio.