[Cite as *Goldstein v. Ohio Dept. of Transp., Dist. 4*, 2010-Ohio-3935.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JONATHAN D. GOLDSTEIN

    Plaintiff

    v.

OHIO DEPARTMENT OF TRANSPORTATION, DISTRICT 4

    Defendant

    Case No. 2009-09701-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶ 1} Plaintiff, Jonathan D. Goldstein, filed this action against defendant, Department of Transportation (ODOT), alleging his 2004 Honda Pilot was damaged as a proximate cause of negligence on the part of ODOT in "overseeing" a construction operation on a bridge spanning Interstate 680 in Youngstown. On August 13, 2009, at approximately 12:05 p.m., plaintiff traveled under the Ridge Avenue bridge that spans Interstate 680 while APBN, Inc., a subcontractor of ODOT contractor Shelly & Sands, Inc., was conducting paint removal operations on the bridge by sandblasting. Plaintiff advised that he was traveling north in the right lane of Interstate 680 and the left lane was closed for the construction operation on the bridge. Plaintiff related "[a]s I passed through the worksite my car was damaged by falling debris that was caused by a worker that was sandblasting paint from the bridge." Plaintiff explained the APBN, Inc. employee was conducting the sandblasting operation from a standing position on top of an elevated box-truck that was parked on Interstate 680 beneath the bridge. Plaintiff further explained this sandblasting of the bridge was being conducted "without any enclosure" covering any portion of the bridge area. Plaintiff stated "[a]s I passed

through the (APBN, Inc.) worker directed his nozzle toward the far right side of the passing lane causing debris to fall and damage my vehicle." Plaintiff recalled he then exited the roadway at the nearest exit, reentered Interstate 680, drove south back to the sandblasting job site where he parked his vehicle, and began taking photographs (copies submitted) of the work set up. After photographing the operation, plaintiff proceeded to the Youngstown Police Department and filed an incident report. Plaintiff claimed the falling debris from the bridge sandblasting caused multiple areas of damage to the body of his 2004 Honda Pilot including "chips, scratches and dings in my hood, (left) fender, windshield and roof." Plaintiff filed this complaint requesting total damages of $1,346.75 representing the cost of repairing his vehicle, car rental expense, and work loss, all resulting from the August 13, 2009 described incident. The filing fee was paid. In his complaint, plaintiff submitted a copy of the title (issue date July 31, 2009) to his 2004 Honda.

{¶ 2} The photographs plaintiff submitted depicting the sandblasting in progress show that the operation was being conducted in the open with no covering around the elevated box truck or bridge area where paint was being removed from the bridge structure. One photograph shows a cloud of dust like particles floating about the bridge structure and descending upon the open traveled portion of Interstate 680. Plaintiff also submitted photographs depicting damage to his vehicle. From a review these photographs, it appears the damage depicted is consistent with the assertion that the vehicle was pelted with fine particulate, although the damage shown appears to be extremely minor. However, one photograph shows damage in the form of a circular indentation which appears consistent with the vehicle body being hit with a chunk of concrete or rock and not being pelted with fine particulate matter.

{¶ 3} Defendant acknowledged that the area where plaintiff's alleged damage incident occurred was located within the limits of a working construction project under the control of ODOT contractor, Shelly & Sands, Inc. Defendant explained this particular project, "dealt with improving structures on I-680 within the City of Youngstown and these would relate to mileposts 4.03 to 12.18 in Mahoning County." Defendant located plaintiff's described incident according to the Youngstown Police Department Report he filed at the Woodland Overpass, which corresponds to "milepost 5.94 which would be within the construction limits of this project." Defendant asserted

Shelly & Sands, Inc., by contractual agreement, was responsible for any damage occurrences or mishaps within the limits of the construction zone. Therefore, ODOT argued Shelly & Sands, Inc. should be the proper party defendant in this action. Defendant implied all duties such as the duty to inspect, the duty to warn, the duty to maintain, and the duty to repair defects were delegated when an independent contractor takes control over a particular section of roadway. All work by the contractor was to be performed in accordance with ODOT mandated specifications and requirements and subject to ODOT approval. Furthermore, ODOT maintained an onsite inspection presence within the limits of the project area.

{¶ 4} For plaintiff to prevail on a claim of negligence, he must prove, by a preponderance of the evidence, that defendant owed him a duty, that it breached that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St. 3d 79, 2003-Ohio-2573,¶8 citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 472 N.E. 2d 707. Plaintiff has the burden of proving, by a preponderance of the evidence, that he suffered a loss and that this loss was proximately caused by defendant's negligence. *Barnum v. Ohio State University* (1977), 76-0368-AD. However, "[i]t is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such burden." Paragraph three of the syllabus in *Steven v. Indus. Comm.* (1945), 145 Ohio St. 198, 30 O.O. 415, 61 N.E. 2d 198, approved and followed.

{¶ 5} Defendant has the duty to maintain its highways in a reasonably safe condition for the motoring public. *Knickel v. Ohio Department of Transportation* (1976), 49 Ohio App. 2d 335, 3 O.O. 3d 413, 361 N.E. 2d 486. However, defendant is not an insurer of the safety of its highways. See *Kniskern v. Township of Somerford* (1996), 112 Ohio App. 3d 189, 678 N.E. 2d 273; *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App. 3d 723, 588 N.E. 2d 864. The duty of ODOT to maintain the roadway in a safe drivable condition is not delegable to an independent contractor involved in roadway construction. ODOT may bear liability for the negligent acts of an independent contractor charged with roadway construction. *Cowell v. Ohio Department of Transportation*, Ct. of Cl. No. 2003-09343-AD, jud, 2004-Ohio-151. Despite defendant's

contention that ODOT did not owe any duty in regard to the construction project, defendant was charged with duties to inspect the construction site and correct any known deficiencies in connection with particular construction work. See *Roadway Express, Inc. v. Ohio Dept. of Transp.* (June 28, 2001), Franklin App. 00AP-1119.

{¶ 6} Alternatively, defendant argued neither ODOT nor Shelly & Sands, Inc. had any knowledge "of the sandblasting operation on I-680 prior to plaintiff's incident." ODOT records indicate no calls or complaints were received regarding the sandblasting incident prior to plaintiff's incident. Defendant related ODOT records show "this portion of I-680 has an average daily traffic volume between 4,890 and 53,450, however, no other complaints were received prior to plaintiff's alleged incident." Defendant contended plaintiff failed to produce evidence establishing that his property damage was attributable to any conduct on either the part of ODOT or Shelly & Sands, Inc. Defendant asserted plaintiff did not offer any evidence to prove ODOT negligently maintained the roadway bridge. Defendant argued that any damage to plaintiff's vehicle could not have been caused by APBN, Inc. conducting sandblasting operations.

{¶ 7} Defendant submitted a letter from APBN, Inc. Vice Present, Vasilis Katsourakis, regarding the damage observed on plaintiff's vehicle. Vasilis Katsourakis reported APBN, Inc. representatives met with plaintiff on September 14, 2009 and examined the damage on his car. Vasilis Katsourakis expressed the opinion that the damage observed on the car was very minor and was not caused by APBN, Inc. conducting sandblasting. Vasilis Katsourakis noted the following:

{¶ 8} "The majority of the damage reported by Mr. Goldstein and observed by APBN Inc.'s representative, Anthony Katsourakis, were three distinct pot marks located in the middle of Mr. Goldstein's vehicle. To suggest that 20-40 black beauty sand (sand finer than sugar) created the pot marks on Goldstein's auto would be absurd. The pot marks on Goldstein's vehicle were caused by something denser than the 20-40 black beauty sand APBN INC. was using on this project."

{¶ 9} Additionally, Vasilis Katsourakis reported that plaintiff "pointed out four areas of windshield damage of which three were bug marks that were removed by Mr. Katsourakis."

{¶ 10} Defendant also supplied a statement from ODOT Project Engineer, Tom Kopnicky, regarding his opinion of the alleged damage incident. Kopnicky recorded the

following observations:

{¶ 11} "After looking at the pictures, I don't think that the damage was caused by APBN. The dents in the hood, in no way could have been caused by our operation. It is not physically possible. We are talking about paint being removed from the concrete. The waste created by this operation is a very fine, light debris that is swept up with brooms."

{¶ 12} Plaintiff filed a response insisting his 2004 Honda Pilot was damaged as a result of APBN, Inc. conducting sandblasting operations on the bridge spanning Interstate 680. Plaintiff advised APBN, Inc. failed to follow ODOT specifications when engaging in sandblasting. Plaintiff contended his vehicle was damaged as a proximate cause of the failure of APBN, Inc. to follow set ODOT specifications when performing the sandblasting. Specifically, plaintiff asserted "APBN's negligence caused debris to fall and damage my vehicle, as there was no enclosure to catch falling sandblast cuttings and debris." Plaintiff's photographic evidence clearly shows no enclosure was in position around the APBN, Inc. box truck and bridge during the sandblasting operation. Plaintiff submitted a copy of ODOT specification 514.13(D)[1] titled "Containment/Waste Disposal," which requires ODOT contractors to erect enclosures around bridges when performing sandblasting operations.

---

[1] ODOT "Construction and Material Specifications" manual section 514.13(D) provides in relevant part:

"**D. Containment/Waste Disposal (QCP #4).** Waste material generated by abrasive blasting operations in the field is a solid waste and may be a hazardous waste. Contain, collect, store, evaluate, and properly dispose of the waste material. Comply with all Federal, State, and local environmental protection laws, regulations, and ordinances including, but not limited to, air quality, waste containment, and waste removal. The Contractor is advised that various governmental bodies are involved with solid waste and hazardous waste disposal and the Contractor is responsible for complying with laws enforced by the various governmental bodies.

"To prevent contamination of the pavement or soil, park all equipment on ground covers free of cuts, tears, and holes.

"Clean equipment of spent abrasives or debris before bringing equipment to the project, moving equipment from one bridge site to another, and removing equipment from the project. Store debris cleaned from equipment with the debris from the structure that generated the debris.

"Erect an enclosure to completely surround (around, under and over the top on truss type bridges) the blasting operations. The Contractor may use the ground as the bottom of the enclosure if the ground is completely covered with plastic or tarps.

"Construct the enclosure of flexible materials such as tarpaulins (specifically designed for blasting containments), or construct the enclosure of rigid materials such as plywood. Maintain all materials free of tears, cuts, and holes. Overlap all seams a minimum of 6 inches (150 mm) and fasten the seams together at 12-inch (300 mm) centers or in a manner that ensures a seal that does not allow openings between the edges of the containment material. Extend the vertical sides of the enclosure completely up to the bottom of the deck on a steel beam bridge and use bulkheads between beams to enclose the blasting area."

{¶ 13} Plaintiff also disputed the description of the inspection of his vehicle by Anthony Katsourakis that was provided by Vasilis Katsourakis. Plaintiff explained Anthony Katsourakis looked at his blue Honda Pilot for less than ten seconds and then refused any responsibility for any damage to the vehicle. Plaintiff also denied Anthony Katsourakis ever removed any bug marks from the windshield of the Honda Pilot. Plaintiff claimed Anthony Katsourakis did not examine the Honda Pilot long enough to remove anything from the windshield. Plaintiff maintained he cleaned the windshield of the Honda Pilot before meeting with Anthony Katsourakis and recalled Katsourakis at no time during the meeting touched the Honda Pilot.

{¶ 14} Plaintiff resubmitted photographs he took of the APBN, Inc. sandblasting worksite minutes after his described damage event occurred. Plaintiff pointed out the photographs depict APBN, Inc. personnel conducting sandblasting on the bridge area "over the open lane of traffic" on Interstate 680 North without any mandated form of enclosure over the work site. Plaintiff also pointed out a photograph he took depicts "clouds of debris falling on the open lane of traffic." Plaintiff resubmitted a photograph he took depicting the windshield of his 2004 Honda Pilot. Plaintiff advised this photograph "clearly shows some of the dozens of small chips and gouges" claimed to have been caused by debris falling from the sandblasting operation. From a review of this photograph, the trier of fact is unable to discern what manner of windshield damage is depicted. Additionally, plaintiff resubmitted a photograph depicting body damage to his vehicle he described as "one of the dings that were created by the falling debris." From a review of this photograph, the trier of fact finds the damage depicted appears as a circular indentation more likely than not caused by a hard pebble sized object propelled at a high rate of velocity. The damage depicted is not consistent with damage caused by falling minute sandblasting particulate descending at a slow rate of speed. Plaintiff provided a hand drawn sketch of his vehicle pointing out the damaged areas. The damages shown on the sketch appear to be confined to the hood, front fenders, front of the roof, and windshield of the vehicle. Plaintiff argued "[t]he facts and photos clearly demonstrate that the damage to my vehicle was caused by an overhead shower of some type of abrasive debris." Plaintiff reasserted he is entitled to recover all damages claimed.

{¶ 15} Generally, in order to prove a breach of the duty to maintain the highways,

plaintiff must prove, by a preponderance of the evidence, that defendant had actual or constructive notice of the precise condition or defect alleged to have caused the accident. *McClellan v. ODOT* (1986), 34 Ohio App. 3d 247, 517 N.E. 2d 1388. Defendant is only liable for roadway conditions of which it has notice but fails to reasonably correct. *Bussard v. Dept. of Transp.* (1986), 31 Ohio Misc. 2d 1, 31 OBR 64, 507 N.E. 2d 1179. However, proof of notice of a dangerous condition is not necessary when defendant's own agents actively cause such condition. See *Bello v. City of Cleveland* (1922), 106 Ohio St. 94, 138 N.E. 526, at paragraph one of the syllabus; *Sexton v. Ohio Department of Transportation* (1996), 94-13861. Plaintiff, in the instant claim, has alleged that the damage to his vehicle was directly caused by sandblasting activity of ODOT's contractor on August 13, 2009.

{¶ 16} In order to find liability for a damage claim occurring in a construction area, the court must look at the totality of the circumstances to determine whether ODOT acted in a manner to render the highway free from an unreasonable risk of harm for the traveling public. *Feichtner v. Ohio Dept. of Transp.* (1995), 114 Ohio App. 3d 346, 683 N.E. 2d 112. In fact, the duty to render the highway free from unreasonable risk of harm is the precise duty owed by ODOT to the traveling public both under normal traffic conditions and during highway construction projects. See e.g. *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St. 3d 39, 42, 564 N.E. 2d 462.

{¶ 17} "If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in light of all the attending circumstances, the injury is then the proximate result of negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone." *Cascone v. Herb Kay Co.* (1983), 6 Ohio St. 3d 155, 160, 6 OBR 209, 451 N.E. 2d 815, quoting *Neff Lumber Co. v. First National Bank of St. Clairsville, Admr.* (1930), 122 Ohio St. 302, 309, 171 N.E. 327. This court, as trier of fact, determines questions of proximate causation. *Shinaver v. Szymanski* (1984), 14 Ohio St. 3d 51, 14 OBR 446, 471 N.E. 2d 477. In the instant claim, the trier of fact finds plaintiff has failed to offer sufficient proof to establish that the damage to his vehicle was caused by ODOT's contractor conducting sandblasting operations. Despite the fact APBN, Inc. totally disregarded ODOT specifications when engaged in sandblasting, the trier of fact is not convinced uncontained sandblasting debris caused the damage

plaintiff claimed. Plaintiff has failed to prove that his damage was proximately caused by any negligent act or omission on the part of ODOT or its agents. See *Wachs v. Dept. of Transp., Dist. 12*, Ct. of Cl. No. 2005-09481-AD, 2006-Ohio-7162; *Vanderson v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2005-09961-AD, 2006-Ohio-7163; *Shiffler v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2007-07183-AD, 2008-Ohio-1600.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JONATHAN D. GOLDSTEIN

    Plaintiff

    v.

OHIO DEPARTMENT OF TRANSPORTATION, DISTRICT 4

    Defendant

    Case No. 2009-09701-AD

Deputy Clerk Daniel R. Borchert

ENTRY OF ADMINISTRATIVE DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Jonathan D. Goldstein
1931 State Route 551
Enon Valley, Pennsylvania 16120

Jolene M. Molitoris, Director
Department of Transportation
1980 West Broad Street
Columbus, Ohio 43223

RDK/laa
4/8
Filed 4/21/10
Sent to S.C. reporter 8/20/10