FEICHTNER, Admr., Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee.

[Cite as *Feichtner v. Ohio Dept. of Transp.* (1995), 114 Ohio App.3d 346.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95API01–47.

Decided Sept. 28, 1995.

*Joseph L. Coticchia*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Velda K. Hofacker*, Assistant Attorney General, for appellee.

———

PETREE, Judge.

Plaintiff, Roland C. Feichtner, administrator of the estate of Debra Marie Feichtner, appeals from a decision of the Court of Claims of Ohio rendering judgment in favor of defendant, Ohio Department of Transportation. In support of his appeal, plaintiff asserts six assignments of error:

"I. The trial court erred in concluding that appellee owed a lesser duty of care toward the traveling public when undertaking construction on our state system of highways than it does under normal traffic conditions.

"II. The finding of the trial court that appellee was not negligent in shifting the pattern of traffic on Interstate 77 near the Fleet Avenue bridge without first extending the protective fencing that existed overhead along the bridge was against the manifest weight of the evidence.

"III. The finding of the trial court that appellee did not have notice of nor could it have foreseen the criminal acts of Ronald Jackson was against the manifest weight of the evidence.

"IV. The trial court erred in finding that the criminal acts of Ronald Jackson were the sole proximate cause of the death of Debra Feichtner.

"V. The finding of the trial court that the death of Debra Feichtner would not necessarily have been prevented had the protective fencing along the Fleet Avenue bridge been extended was against the manifest weight of the evidence.

"VI. The trial court erred in permitting appellee to introduce expert testimony on the issue of liability."

At approximately 11:15 p.m. on April 13, 1991, plaintiff and his wife, Debra Feichtner, were in their vehicle traveling south on Interstate 77 ("I-77") in the city of Cleveland, Ohio. At the time, both I-77 and roadways in the vicinity of the Fleet Avenue bridge, which spans I-77, were under construction pursuant to a contract between Kenmore Construction Company ("Kenmore") and defendant. In order to facilitate the construction project, Kenmore, in conjunction with defendant, shifted traffic between three and four feet to the right, through the use of construction barrels, from the normal farthest right lane, so that traffic proceeded partially on the normal farthest right lane and partially on the paved shoulder of I-77 as it approached the overhead Fleet Avenue bridge. In addition, the Fleet Avenue exit ramp had been closed to traffic.

Due to the construction, plaintiff and his wife were traveling in the temporary lane. As the Feichtner vehicle approached the Fleet Avenue overpass, a fourteen-pound sandstone rock crashed through the passenger-side windshield, striking plaintiff's wife in the torso. Plaintiff rushed his wife to the hospital, where she later succumbed to her injuries.

A police investigation into the death of plaintiff's wife resulted in a determination that Ronald Jackson had thrown the rock onto plaintiff's vehicle. Jackson was later convicted of the murder of plaintiff's wife.

On April 20, 1992, plaintiff instituted a wrongful death and survivoral action in the Court of Claims of Ohio, seeking damages arising out of the accident. For his cause of action, plaintiff alleged, *inter alia*, that defendant "knew or should have known that on prior occasions rocks and debris had been thrown from bridges which span Interstate highways in the State of Ohio" and that "[w]ith notice and knowledge that rocks and debris had been thrown from bridges," defendant's negligence in failing to extend the protective fencing over the temporary lane of traffic during the construction on I-77 proximately caused the death of plaintiff's wife. Defendant's answer denied any negligence and alleged

that the actions of Ronald Jackson were the sole proximate cause of the death of plaintiff's wife.

The case was bifurcated and tried on the sole issue of liability. In its decision dated December 13, 1994, the trial court, recognizing that defendant cannot guarantee the same level of safety during a construction project as during normal traffic conditions, rejected plaintiff's theory that defendant was negligent in shifting the traffic pattern of I–77 without extending the protective fencing over the temporary lane of traffic. The court reasoned that it would be cost–prohibitive to expect defendant to provide additional fencing, roadways, or traffic control devices for temporary projects such as the construction on I–77, and that such a requirement would essentially mandate that defendant completely close any roadway under construction or repair. The court further found that defendant provided a reasonable degree of safety during the construction project, through the use of traffic control barrels, construction warning signs and reduction in speed limit in the construction area. The court further found that defendant had no notice of objects being thrown from the Fleet Avenue bridge and that the incident would not necessarily have been prevented even if defendant had extended the fencing. Last, the court concluded that the criminal actions of Ronald Jackson were the sole proximate cause of the death of plaintiff's wife. Plaintiff has timely appealed the trial court's judgment.

Because the sixth assignment of error raises issues regarding the admissibility of testimony offered by a substantial number of witnesses in this case, we will address it first.

Plaintiff contends that the trial court abused its discretion in permitting defendant, over plaintiff's objection, to introduce the expert testimony of defendant's engineers Gary David Leake and Eric Forsberg and the testimony of defendant's engineer Gary Creager. The record reveals that on June 17, 1992, plaintiff submitted interrogatories to defendant requesting, *inter alia*, information regarding the identity of witnesses familiar with the incident and the identities of expert witnesses. Defendant responded by providing no information regarding the identity of witnesses familiar with the incident and stating, "Not known. Defendant assumes [p]laintiff will identify its experts in accordance with local rules, as will the [d]efendant" in response to the expert witness interrogatory. There is no indication in the record that plaintiff filed a motion to compel after receiving defendant's response.

On May 28 and July 9, 1993, plaintiff deposed Forsberg and Leake, respectively; plaintiff filed these depositions with the trial court on August 8, 1994. By order dated March 28, 1994, the trial court set a discovery cut-off date of August 12, 1994. By order dated April 14, 1994, the court directed defendant to provide

plaintiff with the names of its expert witnesses and a copy of their reports on or before July 1, 1994. In a letter dated July 1, 1994, defendant indicated as follows:

"[Y]ou have already taken the depositions of various ODOT employees [including Leake and Forsberg] who will testify in this matter. I suppose these individuals could be considered as experts in their fields, so to the extent that their testimony can be considered an 'expert opinion' there [sic] depositions shall serve as their reports. Finally, I am enclosing some additional comments made by Mr. Eric Forsberg which supplement the testimony he provided at this deposition."

Thereafter, on August 8, 1994, plaintiff filed a motion *in limine* which sought preclusion of any expert testimony offered on the issue of liability by any of defendant's witnesses. This motion was overruled on August 29, 1994. On August 30, 1994, defendant filed its pretrial statement, listing as potential witnesses several of defendant's employees, including, *inter alia,* Leake, Forsberg and Creager. At trial, when defendant sought to introduce the testimony of its employees, plaintiff objected.

The admission or exclusion of evidence is generally within the sound discretion of the trial court. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382. Absent an abuse of discretion, a trial court's ruling on admission of evidence will not be overturned. *Id.* at 164, 529 N.E.2d at 1384. An abuse of discretion is more than an error of law; it implies the court's ruling is unreasonable, arbitrary or unconscionable. *Id.* at 166, 529 N.E.2d at 1386.

In *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444, the Supreme Court of Ohio stated that one of the purposes of the Rules of Civil Procedure is to prevent surprise to either party at the trial or to avoid hampering either party in the preparation of its claim or defense. This may be accomplished by the discovery process, which "mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries." *Id.* at 86, 12 OBR at 75, 465 N.E.2d at 446.

In *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 370, 28 OBR 429, 431, 504 N.E.2d 44, 47, the Supreme Court stated:

"Civ.R. 26(E)(1) provides that ' * * * [a] party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.' An objective of this rule is to provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective

cross-examination is especially compelling where expert testimony is to be introduced."

■ Furthermore, "[w]here the undisclosed testimony of an expert witness creates substantial likelihood of surprise and there is an indication that one party deliberately disrupts the free flow of information between the parties, the trial court *must either* exclude such testimony or allow the other side time to find and present rebuttal testimony." (Emphasis *sic.*) *Earl Evans Chevrolet, Inc. v. Gen. Motors Corp.* (1991), 74 Ohio App.3d 266, 282, 598 N.E.2d 1187, 1197.

■ As to the testimony of Leake and Forsberg, plaintiff maintains that because they were not identified as expert witnesses until July 1, 1994 (the court-imposed cut-off date for the identification of expert witnesses), several months after plaintiff's counsel deposed them, plaintiff's counsel's opportunity to prepare for trial was severely and prejudicially compromised. The fact that defendant did not identify Leake and Forsberg as experts in its initial response to plaintiff's interrogatories does not rise to the level of a deliberate disruption of the free flow of information between the parties; defendant subsequently identified Leake and Forsberg as experts within the time limits set by the court. Furthermore, a review of the depositions taken by plaintiff and presented as evidence by plaintiff clearly reveals that plaintiff's counsel was well aware of the fact that he was deposing expert witnesses; the witnesses were asked detailed questions about their credentials and were asked several opinion questions. Furthermore, once defendant identified Forsberg and Leake as experts, plaintiff could have request-ed a second deposition, but did not. In addition, there is no substantial difference between the deposition testimony given by Forsberg and Leake and the live testimony offered at trial. Thus, we cannot say that the testimony of Leake or Forsberg offered at trial either surprised plaintiff or hampered his ability to prepare his case. Accordingly, the trial court did not abuse its discretion in admitting their testimony.

■ As to Creager's testimony, plaintiff maintains in his brief that because Creager was not identified as an expert witness until after July 1, 1994, the court-imposed cut-off date for the identification of expert witnesses, and was not identified as a potential witness prior to the court-imposed discovery cut-off date of August 12, 1994, the belated identification of Creager as a witness on defendant's pretrial statement of August 30, 1994 (nineteen days prior to trial) constituted trial by ambush; and thus, the admission of his testimony was prejudicial to plaintiff.

A review of the transcript reveals, however, that plaintiff's sole basis for objecting to Creager's testimony was that when asked in discovery to identify those witnesses "familiar with the incident and death described in Complaint

[*sic* ]," defendant responded, "None." Plaintiff maintained at trial that Creager should have been identified in response to this interrogatory; however, Creager testified to no knowledge of the incident, the death of plaintiff's wife, or familiarity with the Fleet Avenue bridge. His testimony consisted only of factual statements based upon the work he performs for defendant. Moreover, plaintiff neither requested a list of witnesses in his interrogatories nor subsequently requested such a list from defendant. Furthermore, plaintiff was aware that Creager may have been called as a potential witness from the time of the filing of defendant's pretrial statement on August 30, 1994. However, the record is devoid of any indication that plaintiff made any effort to raise his concerns prior to the commencement of trial, such as requesting additional discovery or filing a motion to compel. Furthermore, Creager's testimony did not differ substantially from that of either Leake or Forsberg; thus, Creager's testimony added little, if anything, to defendant's case. Thus, we find no basis for plaintiff's assertion that he was prejudiced by the admission of Creager's testimony.

Accordingly, the sixth assignment of error is not well taken.

By the first assignment of error, plaintiff contends that the trial court erred in concluding that defendant owed a lesser duty of care toward the traveling public in construction zones than it does under normal traffic conditions. Upon review of the trial court's decision, we find that plaintiff mischaracterizes the trial court's statement. The trial court did not conclude, as plaintiff contends, that defendant owed a lesser duty of care toward plaintiff and his wife in the construction area on I–77; rather, the trial court stated that, while defendant is not an insurer of the safety of its highways, it owes a duty to the traveling public to construct, maintain and repair its system of highways in a safe and reasonable manner; furthermore, the court must look at the totality of the circumstances in determining whether defendant "acted sufficiently to render the highway reasonably safe for the traveling public" during the construction project on I–77. Thus, the court concluded that defendant "had a duty to provide the traveling public with a reasonable amount of safety during the construction on I–77," which is the precise duty owed to the traveling public under normal traffic conditions. See *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 723, 588 N.E.2d 864. The trial court simply recognized the fact that defendant cannot guarantee the same level of safety during a highway construction project as it can under normal traffic conditions. This conclusion is supported by the testimony of Forsberg, who stated that defendant is never able to maintain the same level of safety as when there are normal traffic conditions. Forsberg indicated, however, that defendant does provide the traveling public with a reasonable degree of safety in construction zones, by way of utilizing traffic control barrels, reducing the applicable speed limit, and erecting construction warning signs.

Accordingly, plaintiff's first assignment of error is not well taken.

By the second assignment of error, plaintiff disputes the trial court's finding that defendant was not negligent in shifting the traffic pattern on I–77 as it approached the Fleet Avenue bridge without temporarily extending the overhead fencing. Plaintiff contends that this finding was against the manifest weight of the evidence.

■ In determining whether the judgment of the trial court is against the manifest weight of the evidence, a reviewing court must be guided by the presumption that the findings of a trial court are correct, as the trial judge " * * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276.

In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, the Supreme Court of Ohio set forth the interplay between the presumption of correctness and the ability of a reviewing court to reverse a trial court decision based on the manifest weight of the evidence:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* at syllabus.

■ Furthermore, when addressing the manifest weight of the evidence, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

■ In order to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of that duty, and an injury resulting proximately therefrom. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469. R.C. 5501.11 requires defendant "to construct, reconstruct, widen, resurface, maintain, and repair the state system of highways." As noted previously, defendant must maintain and construct the highways in a safe and reasonable manner. *Rhodus, supra.* However, it is well established that defendant is not an insurer of the safety of the highways. *Id.* at 730, 588 N.E.2d at 868. Thus, defendant had a duty to conduct the repairs on I–77 in a reasonably safe manner. Plaintiff essentially contends that defendant breached this duty by failing to temporarily extend the overhead protective fencing approximately ten feet past the temporary lane of travel. Plaintiff also maintains that defendant owed a special duty toward plaintiff's wife to anticipate or foresee the criminal actions of Ronald Jackson.

Defendant made a discretionary decision to install protective fencing along the Fleet Avenue bridge in the mid–1970s, in part to discourage the dropping or throwing of objects from the bridge onto I–77 below. At that time, no standards or regulations existed regarding such fencing. The fencing along the bridge extends "from abutment to abutment," which means that it extends over all lanes of traffic, including the berm lane. Thus, the protective fencing on the Fleet Avenue bridge would have extended over any vehicle traveling in the temporary lane of travel during the construction project. Defendant's initial decision to install such fencing along the bridge was a basic policy decision for which defendant is entitled immunity. *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. However, once defendant makes such a discretionary decision, it can be liable for the negligent implementation or maintenance of such a policy. *Id.* at paragraph two of the syllabus.

Pursuant to defendant's policy, permanent upgrading or extension of overhead protective fencing is undertaken only in conjunction with major reconstruction projects on overhead bridges. No policy exists requiring upgrades on fencing not done in conjunction with such reconstruction projects. Since there has been no major reconstruction on the Fleet Avenue bridge since the mid–1970s, the protective fencing has not been upgraded or extended since that time.

Forsberg testified that he knew of no occasion in the state of Ohio where overhead protective fencing was temporarily extended during a construction project such as the one on I–77. Furthermore, Forsberg was unaware of any Federal Highway Administration guidelines or other industry standards requiring additional fencing during construction projects.

Defendant's engineer David Leake testified that extension of fencing past the original configuration is sometimes problematic, in that if the fencing is extended too far past the limit of the bridge abutment, it may inhibit visibility of persons attempting to enter the main roadway from an exit ramp. Leake admitted that extending the fencing on the Fleet Avenue bridge approximately ten feet would be feasible; however, he did not agree that a temporary extension of fencing would be feasible; rather, he indicated that temporary fencing would not "hold up to individuals in the area" and would "attract individuals that are * * * curious." Leake concluded that, if fencing were to be extended, only a permanent extension would suffice. Leake also indicated that he knew of no temporary fence extensions completed in the state of Ohio during construction projects. Like Forsberg, Leake was unaware of any civil engineering literature recommending extension of overhead fencing during construction projects. Leake also indicated that there was no reason to extend the overhead fencing on the Fleet Avenue bridge during the construction project on I–77, as the shift in traffic was minimal.

He further indicated that funding is available for use by defendant to engage in upgrading of fencing only if such an upgrade is made as part of a major rehabilitation project, or if there was documented injury warranting an upgrade. Leake also opined that extending the fencing on the Fleet Avenue bridge past the walled abutment would not warrant a special project, even with the knowledge of the injuries sustained by plaintiff's wife in the instant case; rather, extension of the fencing would be undertaken only in conjunction with a major refurbishing of the Fleet Avenue bridge.

In contrast, plaintiff relies on the testimony of his expert, Kenneth Crowley, Ph.D., P.E., to support his position that defendant breached its duty to provide the traveling public with a reasonable amount of safety during the construction project by failing to temporarily extend the protective fencing. Crowley opined that, although the existing fencing provided adequate protection for vehicles traveling in the normal lanes of traffic, the vehicles traveling in the temporary lane were not protected. Accordingly, Crowley opined that defendant was negligent in failing to extend the fencing and that such negligence was the proximate cause of the death of plaintiff's wife. However, on cross-examination, Crowley admitted that he had never been personally involved in a project involving highway construction where traffic was diverted onto the shoulder, had never been personally involved in or had any knowledge of a highway construction project where fencing was extended on overhead bridges, and knew of no cases in the state of Ohio where fencing on bridges was extended during highway construction below.

■ Furthermore, this court is unpersuaded by defendant's argument that defendant's policy 1005.1 and paragraphs 104.04 and 107.07 of its Construction and Materials Specifications imposed an affirmative duty upon defendant to install temporary fencing along the end of the Fleet Avenue bridge. As the trial court correctly noted, paragraphs 104.04 and 107.07 establish responsibilities for contractors who have contracted with defendant to maintain traffic and provide for the public safety and convenience. Defendant's policy 1005.1 establishes guidelines for the installation of protective fencing on existing bridges, and does not concern the upgrading or extension of existing fencing. Thus, these specifications and policies are not determinative of the issue before this court.

■ Additionally, this court finds that defendant owed no special duty to plaintiff's wife to anticipate or foresee the criminal actions of Ronald Jackson. It is well settled that the existence of a duty is fundamental to establishing actionable negligence. "If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence." *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616, citing 70 Ohio Jurisprudence 3d (1986) 53–54, Negligence,

Section 13. Only when there is a failure to discharge an existing duty can one be liable for negligence. *Id.*

In *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173–174, 543 N.E.2d 769, 772–773, the Ohio Supreme Court stated:

"Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection. Thus, liability in negligence will not lie in the absence of a special duty owned by a particular defendant.

" * * * We recognize that there is no common-law duty to anticipate or foresee criminal activity. Thus, the law usually does not require the prudent person to expect the criminal activity of others. As a result, the duty to protect against injury caused by third parties, which may be imposed where a special relationship exists, is expressed as an exception to the general rule of no liability." (Footnotes and citations omitted.)

The existence of a duty depends on the foreseeability of the injury. *Jeffers, supra,* at 142, 539 N.E.2d at 616. Furthermore, the foreseeability of criminal acts depends upon the knowledge of the defendant, which must be determined from the totality of the circumstances; only when the totality of the circumstances is "somewhat overwhelming" will a defendant be held liable for the criminal actions of a third party. *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 396, 642 N.E.2d 657, 662.

In *Gedeon v. E. Ohio Gas Co.* (1934), 128 Ohio St. 335, 338, 190 N.E. 924, 926, the Supreme Court of Ohio set forth the rationale for the above-mentioned rule as follows:

"In delimiting the scope of duty to exercise care, regard must be had for the probability that injury may result from the act complained of. No one is bound to take care to prevent consequences, which, in the light of human experience, are beyond the range of probability."

In the instant case, no such overwhelming circumstances exist. Both Forsberg and Leake testified that, although defendant may have been apprised of scattered complaints of items being thrown from bridges onto highways in the state of Ohio, there were no complaints of objects ever being thrown from the Fleet Avenue bridge, either prior to or during the construction project. Furthermore, Leake stated that he was unaware of any documented complaints of increased rock throwing in construction areas where the lanes of traffic had been temporarily shifted.

A review of the evidence leads this court to the conclusion that plaintiff did not establish the elements necessary to maintain his negligence action. The manifest weight of the evidence offered in this case reveals no breach of defendant's duty to render the highways reasonably safe for the traveling public during the construction on I–77 by failure to temporarily extend the protective fencing on the Fleet Avenue bridge. Furthermore, we hold that defendant owed no special duty to plaintiff's wife to anticipate or foresee the criminal actions of Ronald Jackson. As the trial court's decision finding no negligence on the part of defendant is supported by some competent, credible evidence, we may not reverse the trial court's judgment on this issue.

Accordingly, the second assignment of error is not well taken.

By the third assignment of error, plaintiff contends that the trial court's finding that defendant had no notice of nor could have foreseen the criminal acts of Ronald Jackson was against the manifest weight of the evidence. We disagree. As noted in our discussion of the second assignment of error, both Forsberg and Leake testified that, although defendant may have been apprised of scattered complaints of items being thrown from bridges onto highways in the state of Ohio, there were no documented complaints of objects ever being thrown from the Fleet Avenue bridge, either prior to or during the construction project. Furthermore, Leake stated that he was unaware of any documented complaints of increased rock throwing in construction areas where the lanes of traffic had been temporarily shifted. Thus, competent, credible evidence was offered to support the trial court's finding.

Accordingly, the third assignment of error is not well taken.

By the fourth assignment of error, plaintiff contends that the trial court erred in finding that the criminal acts of Ronald Jackson were the sole proximate cause of the death of plaintiff's wife. When the wilful, malicious or criminal act of a third person intervenes between the defendant's conduct and a plaintiff's injuries, the defendant's negligence is the proximate cause of the plaintiff's injuries if the defendant could have reasonably foreseen the intervening act of the third person. *Taylor v. Webster* (1967), 12 Ohio St.2d 53, 41 O.O.2d 274, 231 N.E.2d 870. The issue of whether an intervening act breaks the causal connection between an act of negligence and resulting injury is necessarily predicated upon a finding of negligence on the part of a defendant. See *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815, paragraph one of the syllabus (setting forth the definition of an intervening cause). In this case, it having been determined that defendant was not negligent as a matter of law in failing to extend the protective fencing, it follows that the criminal acts of Ronald Jackson necessarily were the sole proximate cause of the death of plaintiff's wife; thus, the trial court did not err in so finding.

Accordingly, the fourth assignment of error is not well taken.

By the fifth assignment of error, plaintiff challenges, as being against the manifest weight of the evidence, the trial court's finding that the death of plaintiff's wife would not necessarily have been prevented had the protective fencing been extended. Although both Forsberg and Leake admitted that additional screening may have provided additional protection against objects being thrown from the bridge onto the highway below, they both also stated that, although the sandstone rock thrown by Jackson could have been thrown from a location just past the protective screening, it could just as easily have been thrown over the top of the fencing and that an object could be thrown from a variety of locations along the Fleet Avenue bridge and have the same effect (that of hitting a vehicle below and causing serious damage and/or injury). Thus, we find competent, credible evidence to support the trial court's finding.

Accordingly, the fifth assignment of error is not well taken.

For the foregoing reasons, plaintiff's assignments of error are overruled and the judgment of the Court of Claims of Ohio is hereby affirmed.

*Judgment affirmed.*

CLOSE and LAZARUS, JJ., concur.